**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | : | Case No. 22-10964 (MG) |
|  | : |  |
| Reorganized Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : |  |
| CELSIUS NETWORK LLC and affiliated | : |  |
| post-Effective Date Debtors, by and through | : | Adv. Proc. No. 25-01045 (MG) |
| the Blockchain Recovery Investment Consortium, | : |  |
| LLC, acting in its capacity as the Complex Asset | : | Civil No. 25 Civ. _____ |
| Recovery Manager and Litigation Administrator, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| CHAINALYSIS INC., | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CHAINALYSIS INC.'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Robert D. Drain
Alexander C. Drylewski
Lara A. Flath
One Manhattan West
New York, NY 10001
T: (212) 735-3000

*Counsel for Defendant Chainalysis Inc.*

---

[1] The Debtors in these Chapter 11 cases ("Celsius Debtors"), along with the last four digits of their federal tax identification numbers, are: Celsius Network LLC (2148) ("Celsius"); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................................................................3

ARGUMENT.............................................................................................................................................5

I.      Withdrawal of the Reference for Cause Is Warranted ........................................................6

      A.      The Bankruptcy Court Does Not Have Final Adjudicative Authority ....................6

      B.      This Proceeding Involves Only Non-Core Claims ...................................................8

      C.      The Remaining *Orion* Considerations Support Withdrawal for Cause ...................9

CONCLUSION........................................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ...........................................................................8

*In re AOG Entertainment, Inc.*,
569 B.R. 563 (Bankr. S.D.N.Y. 2017)...................................................................................7

*Argosy Capital Group III, L.P. v. Triangle Capital Corp.*,
2019 WL 140730 (S.D.N.Y. Jan. 9, 2019) ...........................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................8

*Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011) ...........................................................................................7, 9

*Dynegy Danskammer, L.L.C. v. Peabody COALTRADE International Ltd.*,
905 F. Supp. 2d 526 (S.D.N.Y. 2012) .......................................................................9, 10, 11

*In re EMS Financial Services, LLC*,
491 B.R. 196 (E.D.N.Y. 2013).............................................................................................9

*In re Enron Power Marketing, Inc.*,
2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) .............................................................................8

*In re Iannacchino*,
2018 WL 1009279 (S.D.N.Y. Feb. 20, 2018) ....................................................................10

*LightSquared Inc. v. Deere & Co.*,
2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) .........................................................................9

*M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*,
2008 WL 2596322 (S.D.N.Y. June 26, 2008) ....................................................................10

*In re MF Global Inc.*,
484 B.R. 18 (S.D.N.Y. 2012) ................................................................................................6

*In re Northwest Airlines Corp.*,
384 B.R. 51 (S.D.N.Y. 2008) ................................................................................................7

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993)............................................................................................2, 6, 8

*Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Co.*,
2021 WL 1978560 (S.D.N.Y. May 17, 2021) .........................................6, 7, 8, 9, 10, 11

*SEC v. Jarkesy*,
603 U.S. 109 (2024)..................................................................................................7

*In re Soundview Elite Ltd.*,
594 B.R. 108 (Bankr. S.D.N.Y. 2018)......................................................................7

*Stern v. Marshall*,
564 U.S. 462 (2011)...........................................................................................2, 6, 7

*Wills Motors, Inc. v. Volvo North America Corp.*,
131 B.R. 263 (S.D.N.Y. 1991) ...................................................................................8

**STATUTES AND RULES**

28 U.S.C. § 157.............................................................................................................8

28 U.S.C. § 157(b) .......................................................................................................2

28 U.S.C. § 157(c)(1)................................................................................................2, 7

28 U.S.C. § 157(d) ...........................................................................................1, 2, 3, 6

28 U.S.C. § 1334(b) .....................................................................................................5

Fed. R. Bankr. P. 5011.................................................................................................1

S.D.N.Y. Local Bankr. R. 5011-1...............................................................................1

Defendant Chainalysis Inc. ("Chainalysis") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011 and Local Bankruptcy Rule 5011-1, for entry of an order withdrawing the reference of this adversary proceeding to the United States District Court for the Southern District of New York.

## **PRELIMINARY STATEMENT**

In June 2022, the Celsius cryptocurrency asset platform collapsed following "one of the biggest frauds in the crypto industry," with Celsius's founder and former CEO pleading guilty to commodities and securities fraud[2] and Celsius itself agreeing to pay billions of dollars in fines.[3] Since emerging from bankruptcy years later, Celsius, acting through the "Complex Asset Recovery Manager and Litigation Administrator" ("Plaintiff"), now brings claims against Chainalysis for allegedly aiding and abetting Celsius's wrongdoing, along with fifteen consumer-protection state statutory claims.  These claims are nothing more than an attempt to impose unwarranted liability on a third party based on its tenuous connection to the actual wrongdoers at Celsius.

Chainalysis is a blockchain analysis company that creates compliance and investigative tools regularly used by government and law enforcement agencies in connection with digital asset tracing and analysis.  Plaintiff bases its entire litigation theory on a 2020 press release—issued by Celsius more than 18 months before its downfall—that discusses *Celsius's* use of

---

[2]    *See* "Celsius Founder And Former CEO Alexander Mashinsky Pleads Guilty To Multi-Billion Dollar Fraud And Market Manipulation Schemes," available at: https://www.justice.gov/usao-sdny/pr/celsius-founder-and-former-ceo-alexander-mashinsky-pleads-guilty-multi-billion-dollar.

[3]    *See* "FTC Reaches Settlement with Crypto Platform Celsius Network," available at: https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-reaches-settlement-crypto-platform-celsius-network-charges-former-executives-duping-consumers.

Chainalysis's *tools* to calculate its assets under management at that time, and which bears no causal connection to the platform's collapse.

As Chainalysis is prepared to show, Plaintiff's theory of liability is divorced from the facts and legally unsupported.  But, in any event, this lawsuit asserting strictly non-bankruptcy claims and brought well after the Celsius Chapter 11 plan has gone effective should be withdrawn to the District Court "for cause" under 28 U.S.C. § 157(d).  All of the relevant factors articulated in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), as modified by *Stern v. Marshall*, 564 U.S. 462, 503 (2011), weigh in favor of withdrawal.

First, under Article III of the U.S. Constitution and 28 U.S.C. § 157(c)(1), the Bankruptcy Court lacks final adjudicatory authority over any of the claims in this action.  (*Infra* Section I.A.) Chainalysis does not consent to the Bankruptcy Court entering final orders, and the rights being adjudicated are private—not public—under well-established authority.  Thus, any decisions by the Bankruptcy Court would be subject to *de novo* review by the District Court.  Proceeding in the Bankruptcy Court therefore would undermine judicial efficiency by requiring the parties to undertake duplicative briefing, argument and other proceedings, as well as unnecessarily burden the Bankruptcy Court with entirely non-bankruptcy-grounded disputes.

Moreover, all of Plaintiff's causes of action are non-core under 28 U.S.C. § 157(b). (*Infra* Section I.B.)  Plaintiff asserts a common law claim for aiding and abetting breach of fiduciary duty and fifteen consumer-facing state statutory claims.  Each of these claims arises out of alleged pre-petition conduct well before Celsius filed for bankruptcy, and none implicates bankruptcy law or, at this late stage of Celsius's Chapter 11 case, any bankruptcy-related issues. To the contrary, all of the claims are non-bankruptcy claims that do not depend on bankruptcy law for their existence and should proceed in a non-bankruptcy court.

Finally, each of the remaining factors to be considered under 28 U.S.C. § 157(d) supports withdrawing the reference of this proceeding for cause.  (*Infra* Section I.C.)  Withdrawal will not hinder uniformity of bankruptcy administration because Plaintiff's claims do not implicate bankruptcy law or the Bankruptcy Court's supervision of the allocation of value among parties in interest in the Chapter 11 case, as Celsius's Chapter 11 plan has already been confirmed and gone effective.  Plaintiff has requested a jury trial, which, without Chainalysis's consent, can be held only by a non-bankruptcy court.  And this motion is timely, having been filed approximately one week after the action was first commenced, and not motivated by forum shopping—particularly since this action will end up before the District Court for final adjudication in all events.

In sum, based on all relevant factors, this proceeding should be withdrawn to the District Court.

### FACTUAL AND PROCEDURAL BACKGROUND[4]

Celsius offered a platform for holders of cryptocurrency to trade and maintain their digital assets.  (Compl. ¶ 23.)  It provided users two main services: (1) a lending program, in which users could transfer their cryptocurrency assets to Celsius in exchange for weekly interest, and (2) a borrowing program, in which users could use their cryptocurrency holdings as collateral to secure low-interest loans.  (*Id.* ¶ 24.)  For both programs, Celsius paid interest in cryptocurrency, including its own "CEL token."  (*Id.* ¶¶ 24-27.)  Celsius encouraged users to have their interest paid in CEL tokens by offering more value than if the interest was paid out in other currency.  (*Id.* ¶¶ 27-29.)

---

[4]    The allegations drawn from the Complaint are assumed true solely for purposes of this motion.  Chainalysis disagrees with many of Plaintiff's allegations and reserves all rights to contest them at the appropriate time.

In June 2022, following a series of high-profile collapses of other large cryptocurrency-related companies, Celsius experienced a liquidity crisis and the price of its CEL token plummeted.  (Compl. ¶¶ 73-74.)  On June 12, 2022, Celsius paused all customer withdrawals from the platform.  (*Id.* ¶ 74.)  The platform ultimately collapsed, and on July 13, 2022, Celsius filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of New York.  (*Id.* ¶¶ 9, 75.)  Celsius attributed its failure to the "domino effect" created by other collapses in the crypto industry, including the Terra-LUNA collapse.  *In re Celsius Network*, No. 22-10964, Dkt. No. 23, at ¶ 103.[5]

Celsius's founder and former CEO, Alex Mashinsky, pled guilty to multiple counts of commodities and securities fraud in connection with two fraudulent schemes at Celsius.  (*Id.* ¶ 77.)  Through these schemes, Mashinsky (1) misled customers about the safety of Celsius's yield-generating activities, profitability, long-term sustainability of Celsius's high rewards rates and the risks associated with depositing crypto assets with Celsius, and (2) artificially inflated the price of CEL token through market manipulation activities.[6]  (*Id.*)  Following investigations and complaints against Celsius and Mashinsky by the Securities and Exchange Commission, Commodity Futures Trading Commission, Federal Trade Commission and New York State Attorney General, Celsius paid billions of dollars in fines.  (*Id.* ¶ 79.)

---

[5]    On November 10, 2022, Chainalysis filed a proof of claim in the bankruptcy case for $35,639.73 in unpaid fees for services it provided to Celsius from September 3, 2021 to September 2, 2022.  (Declaration of Alexander C. Drylewski, dated March 31, 2025, Ex. 2.)  The proof of claim is unrelated to the allegations set forth in the Complaint, which occurred almost a year prior to this period.  (Compl. ¶¶ 40-52.)  On March 27, 2023, Chainalysis and Celsius filed a stipulation settling Chainalysis's proof of claim, which was approved by the Bankruptcy Court on April 5, 2023.  *In re Celsius Network*, No. 22-10964, Dkt. No. 2372.

[6]    *See* https://www.justice.gov/usao-sdny/pr/celsius-founder-and-former-ceo-alexander-mashinsky-pleads-guilty-multi-billion-dollar.

On November 9, 2023, the Bankruptcy Court confirmed Celsius's Chapter 11 plan, and in January 2024, Celsius successfully emerged from bankruptcy after completing the transactions thereunder.  *In re Celsius Network*, No. 22-10964, Dkt. No. 4289, at 1-2.

Plaintiff commenced this lawsuit against Chainalysis on March 22, 2025.  Plaintiff asserts one claim for aiding and abetting breach of fiduciary duty on behalf of the Celsius Debtors (including Celsius), as well as fifteen claims under various state consumer protection statutes, purportedly on behalf of unnamed Celsius users.  (*Id.* ¶ 10; *see also id.* ¶¶ 80-250.)  The Complaint alleges that Chainalysis assisted Celsius in orchestrating its fraud by pointing to a single press release issued by Celsius 18 months before its collapse.  (*Id.* ¶ 4.)  This press release states that Celsius "partner[ed] with Chainalysis to confirm audit of $3.3 billion in assets." (Compl. Ex. A.)  The press release notes that the "conclusion of th[e] audit" was "confirmed through Chainalysis Reactor, the investigative blockchain analysis tool."  (*Id.*)  However, the $3.3 billion figure noted in the press release was calculated by a Celsius employee—not by Chainalysis—and was revised upward at Mashinsky's direction.  (*Id.* ¶¶ 41, 43-46, 85.)  The Complaint nevertheless alleges that the press release, particularly as to Chainalysis, led to an influx of customer deposits that drove up the value of CEL tokens and, based on other actions of Celsius, assisted the Celsius insiders' breach of fiduciary duty.  (*Id.* ¶ 7.)

The litigation is at the very early stage, with only the Complaint having been filed and no active involvement to date by the Bankruptcy Court.

## ARGUMENT

Federal district courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  While such proceedings are automatically referred to the Bankruptcy Court under Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.), the District Court is permitted to

withdraw all or a portion of such case or proceeding under 28 U.S.C. § 157(d).  *See also In re MF Glob. Inc.*, 484 B.R. 18, 25 (S.D.N.Y. 2012).  The Court should withdraw the reference of this adversary proceeding for "good cause" shown under 28 U.S.C. § 157(d).

## I.    **Withdrawal of the Reference for Cause Is Warranted**

In *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), the Second Circuit set forth the test for determining "cause shown" under 28 U.S.C. § 157(d).  This test was subsequently modified by the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462, 503 (2011), and is referred to as the "modified *Orion* factors."  Under these factors, courts evaluate: "(a) whether the bankruptcy court has final adjudicative authority over the matter; (b) whether the claims at issue are core or non-core; and (c) whether the remaining factors of [i] judicial efficiency, [ii] uniformity, [iii] the parties' jury trial rights, and [iv] the prevention of forum shopping favor withdrawal."  *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, 2021 WL 1978560, at \*4 (S.D.N.Y. May 17, 2021).  Here, all modified *Orion* factors support withdrawal of the reference.

### A.    **The Bankruptcy Court Does Not Have Final Adjudicative Authority**

First, the Bankruptcy Court lacks final adjudicative authority over this action. Bankruptcy courts lack such authority under the U.S. Constitution unless (1) the defendant filed a related proof of claim in the bankruptcy proceeding; (2) the right being adjudicated is public rather than private; or (3) the parties consented to have the bankruptcy court enter final judgment.  *Id.* at \*3; *Stern*, 564 U.S. at 487-99.  None of these exceptions apply here.

Chainalysis has not consented to the Bankruptcy Court entering a final judgment in this matter and the rights being adjudicated are purely private.  *See Stern*, 564 U.S. at 487-99.  Public rights derive from "a federal regulatory scheme, or in which resolution of the claim by an expert Government agency is deemed essential to a limited regulatory objective within the agency's

authority." *Id.* at 490.  Here, by contrast, Plaintiff's exclusively state law claims do not implicate any public right, including any such right under the Bankruptcy Code.  *See Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *4 (state law breach of contract claim does not implicate public right); *see also SEC v. Jarkesy*, 603 U.S. 109, 134 (2024) (securities fraud, like common law fraud, involves a "matter[ ] of private rather than public right" (alteration in original) (citation omitted)).  Accordingly, the Bankruptcy Court does not have final adjudicative authority, which weighs strongly in favor of withdrawal.  *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[W]here the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal . . . .").

While Chainalysis filed a single, unrelated proof of claim in the bankruptcy case for services post-dating the allegations in the Complaint (which has since been resolved), that does not give the Bankruptcy Court final adjudicative authority over this non-core proceeding, as courts have explained.  *In re AOG Ent., Inc.*, 569 B.R. 563, 576 n.12 (Bankr. S.D.N.Y. 2017); *In re Nw. Airlines Corp.*, 384 B.R. 51, 58 (S.D.N.Y. 2008); *see also In re Soundview Elite Ltd.*, 594 B.R. 108, 122 (Bankr. S.D.N.Y. 2018) (proof of claim did not "constitute consent to the Court's authority to fully adjudicate the Trustee's adversary proceeding" after plan of reorganization was confirmed and claim was disallowed).

Moreover, in addition to the constitutional limitation on the Bankruptcy Court's final adjudicative authority over this action, each of the Plaintiff's claims is, as discussed below, "non-core" under 28 U.S.C. § 157(c)(1).  Therefore, without the parties' consent, the Bankruptcy Court is constrained to issue only proposed findings of fact and conclusions of law.

7

## B.    This Proceeding Involves Only Non-Core Claims

This proceeding does not assert any "core claims," as such term is used in 28 U.S.C. § 157.  "A core claim 'invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case,' whereas a non-core claim 'is related to a case under title 11 and might have a conceivable effect on the estate.'"  *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *5 (citation omitted).  "[A] claim is non-core if it 'does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction.'"  *Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*, 2019 WL 140730, at *5 (S.D.N.Y. Jan. 9, 2019) (second alteration in original) (citation omitted).

Here, all of Plaintiff's claims are non-core because they are state law claims that do not depend in any way on bankruptcy law and could proceed in a non-bankruptcy court.  *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667, at *4 (S.D.N.Y. Feb. 10, 2006) (pre-petition state law tort claims non-core); *Wills Motors, Inc. v. Volvo N. Am. Corp.*, 131 B.R. 263, 267 (S.D.N.Y. 1991) (action "based solely on state law contract and tort theories, as well as state and federal statutory rights" is non-core); *see also In re Orion Pictures Corp.*, 4 F.3d at 1102 (breach of contract claim non-core); *In re Enron Power Mktg., Inc.*, 2003 WL 68036, at *9 (S.D.N.Y. Jan. 8, 2003) (same).  The Celsius plan of reorganization was approved in January 2024 and there are no ongoing bankruptcy-related issues implicated by this action.  Plaintiff's single, conclusory allegation to the contrary is devoid of support.  (Compl. ¶ 18 ("This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)").)  The Court should not accept this boilerplate "legal conclusion couched as a factual allegation."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

8

**C.      The Remaining *Orion* Considerations Support Withdrawal for Cause**

Finally, the remaining *Orion* factor—which includes consideration of (i) judicial efficiency, (ii) uniformity of bankruptcy law, (iii) the parties' jury trial rights and (iv) the prevention of forum shopping—also weighs in favor of withdrawing the reference.  As noted above, "where the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal."  *Dev. Specialists*, 462 B.R. at 467; *see also In re EMS Fin. Servs.*, *LLC,* 491 B.R. 196, 205 (E.D.N.Y. 2013) ("In light of the Court's findings that this is a non-core matter, the Court finds that the remaining *Orion* factors weigh in favor of withdrawing the reference . . . .").

First, withdrawal will promote judicial efficiency.  Because this is a non-core proceeding over which the Bankruptcy Court lacks final adjudicative authority (*supra* Section I.A-B), the Bankruptcy Court can make only proposed findings of fact and conclusions of law subject to *de novo* review by the District Court.  *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *8.  Thus, any determinations by the Bankruptcy Court would necessarily require a second review of the same issues by the District Court.  Given the non-bankruptcy nature of these claims—which do not call for any specialized bankruptcy knowledge or expertise—this multiple-layer adjudication process would result in duplicative briefing and other costs and inefficiencies.  *See id.* ("In such circumstances, it is generally 'inefficient to allow the proceedings to go forward, knowing that they will have to be substantially repeated.'" (citation omitted)); *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) ("[W]ithdrawal of the reference is necessary in order to adjudicate the proceedings in a single court . . . .").  The timing of this motion further supports withdrawal.  The Complaint was filed little more than a week ago, and "because the Adversary Proceeding is still in its relatively early stages, withdrawal will not impose undue cost or delay on the parties."

9

*LightSquared Inc. v. Deere & Co.*, 2014 WL 345270, at *6 (S.D.N.Y. Jan. 31, 2014) (citation omitted); *see also Dynegy Danskammer*, 905 F. Supp. 2d at 533 (when motion is filed before discovery or extensive motion practice, "the bankruptcy court likely does not have extensive familiarity with the record related to the Complaint").

Second, maintaining this case in Bankruptcy Court would not "promote the uniformity of bankruptcy administration" for the simple reason that this case involves only state law claims that do not implicate any issues of bankruptcy law. *Dynegy Danskammer*, 905 F. Supp. 2d at 533 ("Courts routinely have found no benefit [of uniformity] where claims are based on state law."); *M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008) ("Withdrawing the reference would not hamper uniform administration of the bankruptcy code because this case is a "non-core" proceeding."). Moreover, Celsius's Chapter 11 plan has been confirmed and gone effective—thus, the present proceeding has a life of its own without affecting the Bankruptcy Court's supervision of the Chapter 11 case and the process of allocating Celsius's value among creditors. This action is just a standalone litigation of state law claims properly heard outside of the Bankruptcy Court.

Third, Plaintiff has requested a jury trial (Compl. pp. 1, 56), and, without the parties' consent, "[b]ankruptcy courts are prohibited from conducting jury trials on claims over which they lack final adjudicative authority." *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *10. Thus, where (as here) a party has sought a jury trial, the "invocation of its jury trial right weighs in favor of withdrawing the reference." *Id.*; *see also In re Iannacchino*, 2018 WL 1009279, at *3 (S.D.N.Y. Feb. 20, 2018) ("[I]t cannot be said that Defendant . . . has waived his right to a jury trial, a factor which weighs in favor of withdrawal of the reference.").

10

Finally, there is no indication that Chainalysis is engaging in forum shopping by moving to withdraw the reference. *See Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at \*11. To the contrary, based on the current posture of the Chapter 11 case and "[b]ecause the Bankruptcy Court cannot enter a final judgment over these claims, this matter will end up before a district court regardless of the outcome of this motion," and thus withdrawal of the bankruptcy reference "does not promote forum shopping." *Id.*; *see also Dynegy Danskammer*, 905 F. Supp. 2d at 533 ("There is no indication that forum shopping was [defendant]'s motivation, as opposed to a genuine desire for more efficient adjudication.").

## **CONCLUSION**

Withdrawal of the reference will promote judicial efficiency and avoid unnecessary costs in connection with Plaintiff's purely non-bankruptcy claims. For the foregoing reasons, the reference to the Bankruptcy Court should be withdrawn and this action should be removed to the District Court.

Dated:  New York, New York
     March 31, 2025

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

*/s/ Alexander C. Drylewski*
Robert D. Drain
Alexander C. Drylewski
Lara A. Flath
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
robert.drain@skadden.com
alexander.drylewski@skadden.com
lara.flath@skadden.com

*Counsel for Defendant Chainalysis Inc.*

11

**WORD COUNT CERTIFICATION**

I hereby certify pursuant to the Local Civil Rule 7.1 of the Joint Local Rules for S.D.N.Y.

and E.D.N.Y. that, according to the word count tool in the document processing software used to

prepare this memorandum of law, the total number of words herein is 3,289.

Dated:  New York, New York
          March 31, 2025

> SKADDEN, ARPS, SLATE,
>   MEAGHER & FLOM LLP
>
> */s/ Alexander C. Drylewski*
> Robert D. Drain
> Alexander C. Drylewski
> Lara A. Flath
> One Manhattan West
> New York, New York 10001
> Telephone: (212) 735-3000
> Facsimile: (212) 735-2000
> robert.drain@skadden.com
> alexander.drylewski@skadden.com
> lara.flath@skadden.com
>
> *Counsel for Defendant Chainalysis Inc.*

12