**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re:                                                      :
                                                            :
CELSIUS NETWORK LLC, *et al.*,[1]                           :
                                                            :
Reorganized Debtors.                                        :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
CELSIUS NETWORK LLC and affiliated                          :
post-Effective Date Debtors, by and through                 :    Civil No. 1:25-cv-02669-MMG
the Blockchain Recovery Investment Consortium,              :
LLC, acting in its capacity as the Complex Asset            :
Recovery Manager and Litigation Administrator,              :
                                                            :
                            Plaintiff,                      :
                                                            :
                - against -                                 :
                                                            :
CHAINALYSIS INC.,                                           :
                                                            :
                            Defendant.                      :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANT CHAINALYSIS INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Robert D. Drain
Alexander C. Drylewski
Lara A. Flath
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

*Counsel for Defendant Chainalysis Inc.*

---

[1] The Debtors in these Chapter 11 cases ("Celsius Debtors"), along with the last four digits of their federal tax identification numbers, are: Celsius Network LLC (2148) ("Celsius"); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................2

I.      PLAINTIFF'S AIDING AND ABETTING CLAIM SHOULD BE DISMISSED............2

      A.     The Adverse Interest Exception Does Not Apply.................................................2

      B.     Plaintiff Fails to Plead Knowing Participation ......................................................4

II.     PLAINTIFF'S CONSUMER CLAIMS SHOULD BE DISMISSED ...............................5

      A.     Plaintiff Concedes Counts 4, 6, 7, 9, 10, 11, and 15 ..............................................5

      B.     Plaintiff Does Not Plead the Remaining Consumer Claims ..................................5

            1.     Plaintiff Does Not Identify Any Consumer Who Purchased CEL .............5

            2.     Plaintiff Fails to Allege Causation or Damages..........................................6

            3.     Plaintiff Does Not Allege a Misleading Statement by Chainalysis ............8

      C.     Count 12 Is Not Assignable .....................................................................................8

      D.     Counts 2, 3, 8, and 16 Are Time-Barred.................................................................9

      E.     Counts 5, 14, and 16 Require In-State Conduct....................................................10

      F.     Counts 8 and 14 Fail Based on Scope or Lack of Notice ......................................11

CONCLUSION...................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Abraham v. American Home Mortgage Servicing, Inc.*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...............................................................6

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .............................................................9

*Alborzian v. JPMorgan Chase Bank, N.A.*,
    235 Cal. App. 4th 29 (2015)............................................................................11

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) .........................................................................7, 8

*Baeza v. Grundowicz*,
    2024 WL 4611446 (S.D. Cal. Oct. 29, 2024)...................................................7

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004) ..........................................................................10

*Bristol Village, Inc. v. Louisiana-Pacific Corp.*,
    170 F. Supp. 3d 488 (W.D.N.Y. 2016) .........................................................10

*Brown v. Cerberus Capital Management, L.P.*,
    703 F. App'x 11 (2d Cir. 2017) .....................................................................12

*Callen v. Resonant Inc.*,
    709 F. Supp. 3d 1021 (C.D. Cal. 2023)...........................................................8

*Celestin v. Martelly*,
    698 F. Supp. 3d 443 (E.D.N.Y. 2023) ...........................................................10

*Chimienti v. Wendy's International, LLC*,
    698 F. Supp. 3d 549 (E.D.N.Y. 2023) .............................................................6

*Concord Capital Management, LLC v. Bank of America, N.A.*,
    102 A.D.3d 406, 2013 N.Y. Slip Op. 00011 (1st Dep't 2013) ...........................3

*Conway v. Marcum & Kliegman LLP*,
    176 A.D.3d 477 (1st Dep't 2019).....................................................................3

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (2012).......................................................................................9

*Curry Management Corp. v. JPMorgan Chase Bank, N.A.*,
    643 F. Supp. 3d 421 (S.D.N.Y. 2022) .............................................................5

*Evans v. PlusOne Sports, LLC*,
    686 F. App'x 198 (4th Cir. 2017) ....................................................................................11

*FIA Leveraged Fund Ltd. v. Grant Thornton LLP*,
    2016 WL 350932 (Sup. Ct., N.Y. Cnty. Jan. 19, 2016) .....................................................2

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007) ...............................................................................5

*Gaidon v. Guardian Life Insurance Co. of America*,
    96 N.Y.2d 201 (2001) .........................................................................................................9

*Gomez-Jimenez v. New York Law School*,
    36 Misc. 3d 230 (Sup. Ct., N.Y. Cnty. 2012),
    *aff'd*, 103 A.D.3d 13 (1st Dep't 2012) ...............................................................................6

*Kirschner v. KPMG LLP*,
    15 N.Y.3d 446 (2010) .................................................................................................2, 3, 4

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ...............................................................................................4

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023) .............................................................................10

*Meyer v. Capital Alliance Group*,
    2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...................................................................11

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
    130 F.4th 91 (4th Cir. 2025) ...............................................................................................6

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) .................................................................................................7

*Pearl v. Coinbase Global, Inc.*,
    2024 WL 3416505 (N.D. Cal. July 15, 2024) ..................................................................11

*RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*,
    2022 WL 80482 (S.D.N.Y. Jan. 7, 2022) ..........................................................................3

*Salichs v. Tortorelli*,
    2004 WL 602784 (S.D.N.Y. Mar. 29, 2004) .....................................................................7

*Seitz v. Marcum LLP*,
    2024 WL 4032638 (Sup. Ct., N.Y. Cnty. Aug. 30, 2024) .................................................2

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ...............................................................................9

*St. Clair-Hibbard v. American Finance Trust, Inc.*,
  2019 WL 4601720 (S.D.N.Y. Sept. 23, 2019), *aff'd*, 812 F. App'x 36 (2d Cir.
  2020) ...........................................................................................................................8

*Stolarik v. New York Times Co.*,
  323 F. Supp. 3d 523 (S.D.N.Y. 2018) ..............................................................................7

*Thuney v. Lawyer's Title of Arizona*,
  2019 WL 467653 (D. Ariz. Feb. 6, 2019) .......................................................................10

*VA Management, LP v. Odeon Capital Group, LLC*,
  189 A.D.3d 525 (1st Dep't 2020).......................................................................................2

*Vanguard Specialized Funds v. VEREIT Inc.*,
  2016 WL 5858735 (D. Ariz. Oct. 3, 2016) ......................................................................10

*York v. Sullivan*,
  369 Mass. 157 (1975) .......................................................................................................11

## INTRODUCTION

Plaintiff's Opposition ("Opp.") fails to save its claims.[2]

First, Plaintiff's aiding and abetting claim is barred by *in pari delicto*. The exceedingly narrow "adverse interest exception" is inapplicable here and foreclosed by the Complaint, which admits that the Press Release caused an influx of customers and CEL's price to skyrocket, directly benefitting Celsius, not just the Insiders. These benefits—even if temporary—negate the exception. (*Infra* §I.A.)

Second, the Complaint fails to plead Chainalysis's knowing participation in the Insiders' wrongdoing. Plaintiff parrots the Complaint's conclusory allegations (and purports to cite others that appear nowhere), yet fails to address the fatal flaw to its aiding and abetting claim: "decisively, the Complaint does not allege facts that Chainalysis knew inclusion of CEL tokens [in the reported AUM] was improper and based on fraud." (MTD 12.) (*Infra* §I.B.)

Finally, after conceding dismissal of nearly half of the Consumer Claims (*infra* §II.A), the Opposition cannot rectify the independent defects remaining. (*Infra* §II.B-F.) These include that Plaintiff fails to identify a *single consumer* who purchased CEL in reliance on, or with any awareness of, the Press Release, or explain how certain claims are assignable—each necessary for Plaintiff's standing. Relatedly, the Opposition does not and cannot plead causation or damages. For example, Plaintiff does not dispute that the Press Release must be read in context with the linked audit results, resolving any uncertainty as to Chainalysis's lack of involvement in Celsius's asserted wrongful conduct.

---

[2] Capitalized terms have the same meaning used in Chainalysis's Motion to Dismiss ("MTD") (ECF 24).

## ARGUMENT

## I.    PLAINTIFF'S AIDING AND ABETTING CLAIM SHOULD BE DISMISSED

### A.    The Adverse Interest Exception Does Not Apply

Plaintiff does not dispute that, under *in pari delicto* and the *Wagoner* Rule, the Insiders' fraudulent conduct is imputed to Celsius, and that, as Litigation Administrator, Plaintiff stands in Celsius's shoes.  (MTD 9-11.)  Nor does Plaintiff dispute that New York's bedrock principle of *in pari delicto* bars plaintiffs from suing others for wrongdoing they participated in.  (*Id.* at 9 & n.11.)  Instead, Plaintiff invokes the so-called "adverse interest exception."  But this "most narrow of exceptions," *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 466 (2010), applies only where an agent "*totally abandoned* his principal's interests."  *Id.*; (Opp. 13).  Where the corporation receives *any* benefit, the exception cannot apply.  *Kirschner*, 15 N.Y.3d at 467.

Here, despite its conclusory allegations of "looting," Plaintiff admits that the Insiders did not "totally abandon" Celsius's interests.  (Opp. 10, 15, 23.)  The Opposition concedes that "lying about the AUM [in the Press Release] could only be motivated by a desire to fraudulently attract customers, boost CEL price, and enhance reputation to make Celsius appear more successful and stable than it actually was."  (*Id.* 23.)  Thus, the Press Release caused customers to "flock[] to Celsius," leading to a "massive influx of customer deposits" and sending CEL's price "skyrocket[ing]."  (Compl. ¶¶7, 31, 68.)  In addition to its increased customer base, *Celsius* benefited from the price increase, as *it* held over 100 million CEL tokens (*id.* ¶31), defeating the adverse interest exception.  *VA Mgmt., LP v. Odeon Cap. Grp., LLC*, 189 A.D.3d 525 (1st Dep't 2020) (plaintiff benefited from inflated net asset values); *Seitz v. Marcum LLP*, 2024 WL 4032638, at *1-3 (Sup. Ct., N.Y. Cnty. Aug. 30, 2024) (company benefited from overstated revenue collection figures); *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 2016 WL 350932, at *8 (Sup. Ct., N.Y. Cnty. Jan. 19, 2016) (funds benefited from "false appearance of steady profits").

Plaintiff argues that "Celsius was the <u>victim</u> of the Insiders' breaches" because it later purchased their CEL tokens at inflated prices. (Opp. 13-14 (emphasis in original).) But Plaintiff cannot evade its own allegations that Celsius itself benefited from the influx of customers and increased value of its own CEL tokens when the Press Release was issued. *Kirschner*, 15 N.Y.3d at 468 ("So long as the corporate wrongdoer's fraudulent conduct enables the business to survive—to attract investors and customers and raise funds for corporate purposes—th[e] [adverse interest] test is not met."); *Concord Cap. Mgmt., LLC v. Bank of Am., N.A.*, 102 A.D.3d 406, 406 (1st Dep't 2013) (despite allegations of looting, the "scheme brought millions of dollars into plaintiffs' coffers and allowed plaintiffs to survive for a few years"). Any harm to Celsius as the scheme unraveled is irrelevant: "any harm from the discovery of the fraud – rather than from the fraud itself – does not bear on whether the adverse interest exception applies." *Kirschner*, 15 N.Y.3d at 469.

Plaintiff's case law is inapposite. (Opp. 13-15.) In *RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*, the "parties *dispute*[*d*] whether [the insider's] alleged fraud contributed at all to the survival of the business." 2022 WL 80482, at *3 (S.D.N.Y. Jan. 7, 2022) (emphasis added). In *Conway v. Marcum & Kliegman LLP*, the court held that "the mere continuation of a corporate entity does not per se constitute a benefit that precludes application of the adverse interest exception," particularly where such benefit is speculative. 176 A.D.3d 477, 477-78 (1st Dep't 2019). Here, no speculation is necessary: Plaintiff alleges that Celsius received direct and substantial benefits that went far beyond its "mere continuation." (Compl. ¶¶7, 31, 68.) Finally, Plaintiff cites two inapposite, pre-*Kirschner* cases applying Pennsylvania law that declined to rule on the adverse interest exception at the pleading stage due to factual questions not present here. (Opp. 14-15.)

Next, Plaintiff argues that Chainalysis's *in pari delicto* argument is "premature." (*Id.* 16-17.) Not so. *Kirschner* expressly held that "*in pari delicto* may be resolved on the pleadings." 15 N.Y.3d at 459 n.3; (*see also* Opp. 16 (admitting dismissal on *in pari delicto* grounds is proper when "clear from the face of the pleadings")).

Left with nothing else, Plaintiff asserts that "equitable considerations weigh heavily against the application of *in pari delicto*." (Opp. 17-18.) Not only does the Opposition fail to support such an exception with any case, it is contrary to law, as *Kirschner* specifically declined to adopt any equitable test. 15 N.Y.3d at 475 ("[W]hy should the interests of innocent stakeholders of corporate fraudsters trump those of innocent stakeholders of the outside professionals who are the defendants in these cases?").

### B.    Plaintiff Fails to Plead Knowing Participation

Plaintiff alleges insufficient facts that Chainalysis knew Celsius's AUM was false and took affirmative steps to further the fraud. (MTD 11.) Although the Complaint alleges Celsius increased its AUM figure by including the value of CEL tokens, it does not allege that this was improper or based on fraud, let alone that Chainalysis knew such increase was fraud on Celsius's part. (*Id.* 12.) Failure to plead facts "to support an inference that the alleged aider and abettor had actual knowledge of the fraudulent scheme" requires dismissal. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014).

The Opposition cannot cure this deficiency by calling the Complaint's conclusory allegations "well-supported," or by crafting new details that appear nowhere in the Complaint. (Opp. 18-23; Compl. ¶¶54, 55.)[3]  This is a far cry from adequately pleading that the AUM was

---

[3] Plaintiff asserts that Chainalysis "[k]new that the revised AUM figure published in the Press Release was significantly inflated compared to the number calculated by its own Reactor software," and "[u]nderstood that the methodology used was misleading, and that the inclusion of *(cont'd)*

4

false or Chainalysis's knowing participation.[4]   And while Plaintiff cites cases involving non-conclusory allegations of knowing participation (Opp. 20-22), such allegations are not present here.  *Contra, e.g.*, *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007) (finding strong inference of knowledge where plaintiff alleged *specific facts* indicating that defendant rubber stamped valuations of various securities that it *knew* were potentially false).

## II.   PLAINTIFF'S CONSUMER CLAIMS SHOULD BE DISMISSED

### A.   Plaintiff Concedes Counts 4, 6, 7, 9, 10, 11, and 15

Plaintiff acknowledges that Counts 4, 6, 7, 9, 10, and 15 cannot be assigned.  (Opp. 27 & n.9.)  And Plaintiff fails to respond to, and thus concedes, Chainalysis's argument that Count 11 is time-barred.  (MTD 22); *see Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022).  These Counts should be dismissed with prejudice.

### B.   Plaintiff Does Not Plead the Remaining Consumer Claims

#### 1.   Plaintiff Does Not Identify Any Consumer Who Purchased CEL

Plaintiff's remaining Consumer Claims—whereby Plaintiff attempts to stand in the shoes of injured Celsius customers—should be dismissed because the Complaint does not identify a single customer who purchased CEL, let alone one who relied upon (or was even aware of) the Press Release and harmed as a result—a flaw going both to Plaintiff's standing and the Complaint's assertion of the remaining Consumer Claims.

---

CEL grossly inflated the actual value of Celsius's assets."  (Opp. 19 (citing Compl. ¶¶50, 54).)  But neither assertion is found in the cited paragraphs, or anywhere else in the Complaint.

[4] For instance, the Complaint does not plausibly plead facts showing why Chainalysis would have reason to believe the inclusion of CEL value was improper, as Celsius listed unsold CEL tokens on its balance sheet and valued them at CEL's mark-to-market price in financial analyses submitted to potential investors.  (Ex. 2 at 89-90.)  Plaintiff does not allege that any regulator or third party ever determined that Celsius's AUM was falsely reported.  (MTD 18.)

Plaintiff does not dispute, and thus concedes, that "a plaintiff must allege some awareness of a defendant's misrepresentations prior to purchasing the product." (MTD 14.) Moreover, alleging *each* consumer's awareness is key. (MTD 15.) Plaintiff also ignores *Abraham v. American Home Mortgage Servicing, Inc.*, which held that "each Plaintiff must *individually* plead" that they received and were injured by the false advertisement. 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (emphasis added); (MTD 15). *Gomez-Jimenez v. N.Y. Law School* confirms the same. 36 Misc. 3d 230, 254 (Sup. Ct., N.Y. Cnty. 2012) (plaintiffs pled reliance where "[*e*]*ach* plaintiff . . . specified that he/she relied on" the statements, though reliance was unreasonable (emphasis added)), *aff'd*, 103 A.D.3d 13 (1st Dep't 2012) (Opp. 24 n.6). Plaintiff also misapplies *Chimienti v. Wendy's International, LLC*—in which a New York consumer could not bring claims on behalf of unnamed class members under other states' consumer laws because he did not allege purchases in those states—by simply stating that such deficiency is "not present" here. 698 F. Supp. 3d 549, 562 (E.D.N.Y. 2023); (Opp. 24 n.5). But while that plaintiff alleged specific purchases by himself (and thus standing to assert his own claim in New York, although not others'), Plaintiff alleges specific purchases by *no* consumers.[5]

2.    Plaintiff Fails to Allege Causation or Damages

Plaintiff fails to allege that Chainalysis caused the consumers' harm. (MTD 15-18.) Tellingly, Plaintiff has no substantive response to the Examiner's conclusions, which definitively

---

[5] Allowing Plaintiff's case to proceed without identifying any allegedly harmed consumers would raise numerous issues beyond standing. For instance, Plaintiff argues that the "discovery rule" should apply to save otherwise time-barred claims but does not specify *who* those consumers are, let alone when they discovered their claims. (Opp. 28-29); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 104 (4th Cir. 2025) ("[T]he Court needs to know which shoes Plaintiffs claim to occupy." (citation omitted)).

contradict Plaintiff's theory. Unable to rebut the Report, Plaintiff's only retort is to argue that this Court must ignore it. (Opp. 25-26.)

But the Court may properly consider the Examiner's Report as "[a] document that is integral to the complaint and partially quoted therein may be incorporated by reference in full." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022).[6] The Complaint reproduced a graph of Celsius's customer growth from the Report and alleged, based on that graph, that "[t]he scheme worked" because "[f]ollowing the Press Release, customers flocked to Celsius." (Compl. ¶61.) Indeed, Plaintiff's theory of damages is that this customer growth "caused CEL's price to skyrocket due to fraudulent demand for the token." (*Id.* ¶89; *see also id.* ¶¶68, 69, 78, 82.) Having relied on the Report, Plaintiff cannot run from its conclusion as to why the growth occurred. *See Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018) (considering document that "provide[d] the factual premise" for plaintiff's claims); *Salichs v. Tortorelli*, 2004 WL 602784, at *3 (S.D.N.Y. Mar. 29, 2004).[7] Accordingly, Plaintiff cannot plead that any damages were attributable to Chainalysis rather than Celsius's own buyback scheme or other market factors. (MTD 17-18.)

Plaintiff cannot walk back its reliance on the Report simply because it backfired; indeed, the doctrine of incorporation by reference exists to "prevent[] plaintiffs from selecting only

___

[6] Plaintiff asserts that "[i]t is black-letter law that courts are limited to the four corners of the complaint and its attached exhibits." (Opp. 25 (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)).) But Plaintiff misleadingly omits *Pani*'s next words: courts may also consider documents "incorporated in the complaint by reference." 152 F.3d at 71 (citation omitted).

[7] Plaintiff asserts that a document must be cited "more than once," relying on a Central District of California case. (Opp. 11.) While some (but not all) California courts may apply this rule, there is no indication that it applies in the Second Circuit. *Ark. Pub. Emps.*, 28 F.4th at 352 n.3; *Baeza v. Grundowicz*, 2024 WL 4611446, at *2 (S.D. Cal. Oct. 29, 2024) ("[A] reference may be sufficiently 'extensive' if a single reference is relatively lengthy." (citation omitted)).

portions of documents that support their claims, while omitting portions of those same documents that weaken their claims." *Callen v. Resonant Inc.*, 709 F. Supp. 3d 1021, 1025 (C.D. Cal. 2023) (Opp. 26). Because Plaintiff's "allegations contradict the evidence contained in the [Report] relied upon by [Plaintiff] [(*compare* Ex. 2 at 113-14 *with* Compl. ¶68)], the [Report] control[s], and the Court need not accept the allegations within the [C]omplaint as true." *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 2019 WL 4601720, at *3 (S.D.N.Y. Sept. 23, 2019) (citation omitted), *aff'd*, 812 F. App'x 36 (2d Cir. 2020).[8]

Finally, while Plaintiff alleges that the Press Release caused CEL's price *inflation*, Plaintiff does not plead any connection between the Press Release and CEL's subsequent *collapse*. (MTD 18.) The Opposition fails to respond to this argument—foreclosing causation and damages.

### 3.    Plaintiff Does Not Allege a Misleading Statement by Chainalysis

Plaintiff does not dispute that the Press Release, read in context, was not misleading as to Chainalysis's involvement in the audit. (MTD 18-20.)[9] Plaintiff also does not dispute that the Press Release must be read in context with the audit results displayed on Celsius's website indicating that *Celsius*, not Chainalysis, conducted the audit. (*Id.*) These conceded points warrant dismissal of the Consumer Claims.

### C.    Count 12 Is Not Assignable

Colorado CPA claims are assignable only by "actual consumer[s] who purchased the *defendant*'s goods, services, or property." (Opp. 27 (emphasis added); MTD 21.) No Colorado

---

[8] Plaintiff's footnote on judicial notice is irrelevant. (Opp. 25 n.8.) Courts may consider documents incorporated by reference "for the truth of their contents." *Ark. Pub. Emps.*, 28 F.4th at 352 n.3.

[9] The Opposition repeatedly refers to the "joint" Press Release. Not true. As Plaintiff ignores, the Press Release indicates that it was issued only by Celsius. (MTD 5 n.4; Compl. Ex. A.) The Press Release therefore controls. And the sole Chainalysis quote is not misleading. (MTD 18-20.)

consumers are alleged to have purchased anything from Chainalysis; therefore, under the CPA's plain terms, any purported claims against Chainalysis cannot be assigned. Plaintiff's point about secondary liability is irrelevant. (Opp. 27)

### D.    Counts 2, 3, 8, and 16 Are Time-Barred

**Arizona CFA and California CLRA.**    Courts routinely dismiss such claims where plaintiffs fail to plead facts indicating a consumer's delayed discovery. *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 570 (N.D. Cal. 2019); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 910 (N.D. Cal. 2021). Having failed to plead how any individual consumer covered by these statutes was victimized, the Complaint also fails to identify any consumer's delayed discovery of their claim.

**New York GBL §§349 and 350.**    Plaintiff and Chainalysis agree that these claims "accrue when the injury occurs." (Opp. 29; MTD 22.) Where Plaintiff errs is that, for GBL §349, the injury takes place when the misrepresentation occurs, and for GBL §350, the injury occurs on the date of purchase. (MTD 22-23.) The Opposition fails to refute that the claims are untimely under either standard. (*Id.*)

Plaintiff's reliance on *Gaidon v. Guardian Life Insurance Co. of America*, is misplaced. (Opp. 29.) There, defendants advertised that policy dividends on life insurance policies would cover premiums after a certain date—a "wholly unrealistic" prediction. 96 N.Y.2d 201, 211 (2001) (citation omitted). Thus, the GBL §349 claim did not accrue until the prediction was "actually not met." *Id.*; *see Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (*Gaidon* applies only in narrow circumstances involving "unrealistic predictions"). Here, the alleged false statements did not involve predictions.

Finally, Plaintiff's "rolling injuries" theory is unavailing. (Opp. 29.) Plaintiff does not allege that Chainalysis played any role in Celsius's subsequent press releases or  activities. (Compl. ¶¶63-67.) Plaintiff's assertion that the limitations period for claims *against Chainalysis*

can be extended on account of *other parties'* subsequent conduct lacks any support in law or reason.[10]  *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 287 (S.D.N.Y. 2023) (plaintiff failed to show how "defendants engaged in any materially misleading conduct" through third-party's actions).[11]

### E.    Counts 5, 14, and 16 Require In-State Conduct

**Florida DUTPA.**  Plaintiff's assertion that Florida's long-arm statute permits *jurisdiction* over nonresident defendants (Opp. 30) does not speak to whether the DUTPA covers the *conduct* in question.  (MTD 23-24.)  Here, Plaintiff "do[es] not allege that [Chainalysis] engaged in any conduct whatsoever in Florida."  *Celestin v. Martelly*, 698 F. Supp. 3d 443, 469 (E.D.N.Y. 2023).

**Arizona CFA.**  *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735 (D. Ariz. Oct. 3, 2016) (Opp. 30), is inapposite.  There, defendants had "an office employing over 2,000 people in Arizona," and "some of their investors who suffered from the alleged fraud [we]re Arizona residents."  *Id.* at *11.  But here, "[p]laintiffs have not alleged any conduct that [Chainalysis] committed in Arizona."  *See Thuney v. Lawyer's Title of Ariz.*, 2019 WL 467653, at *6-7 (D. Ariz. Feb. 6, 2019) (distinguishing *Vanguard*).

**Massachusetts CPA.**  Under Massachusetts's "center of gravity" test, when "'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no [CPA] liability."  *Evans v. PlusOne Sports, LLC*, 686 F. App'x 198, 207 (4th Cir. 2017)

---

[10] Nor does the Complaint allege that consumers purchased CEL in *reliance* on Celsius's press releases "throughout 2021 and into 2022."  (*Contra* Opp. 29 (citing Compl. ¶74).)

[11] Plaintiff asserts that "[w]here the timing of injury or discovery is reasonably in dispute, the issue must go to the factfinder," citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004). (Opp. 29.)  But *Bano* involved a claim for a latent personal injury, which accrues upon plaintiff's discovery of the injury.  361 F.3d at 709.  In contrast, the discovery rule does not apply to GBL claims.  *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016).

(citations omitted).  Here, "virtually all the conduct" occurred outside Massachusetts; nothing in the Complaint suggests otherwise.  (MTD 24.)

### F.      Counts 8 and 14 Fail Based on Scope or Lack of Notice

The California CLRA applies only to tangible goods and services.   (MTD 24-25.) Plaintiff's attempt to distinguish *Pearl v. Coinbase Global, Inc.*, 2024 WL 3416505 (N.D. Cal. July 15, 2024), by arguing that Celsius also offered some "consumer-facing financial services" (Opp. 32 n.11), fails because these "ancillary services" are not covered by the CLRA.   *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 40 (2015) (CLRA did not extend to ancillary services provided by mortgage lender).  Nor does the Press Release constitute a "service" under the CLRA.   *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *7 (S.D. Cal. Nov. 6, 2017) ("advertising" of "intangible financial goods" not covered by CLRA).

Moreover, the California CLRA and Massachusetts CPA claims fail because Plaintiff did not comply with pre-suit notice requirements.  (MTD 25-26.)  Plaintiff cites California CLRA cases where notices were sent late or to the wrong address.  (Opp. 32.)  But Plaintiff does not dispute that it sent *no* notice (Opp. 31-32 & n.10), and courts dismiss CLRA claims with prejudice where plaintiffs fail to do so.   (MTD 25.)   Plaintiff's Massachusetts case is similarly distinguishable.  (Opp. 31-32.)  There, plaintiffs did not originally bring a CPA claim and their "second suit, based on [the CPA], complied with the thirty-day requirement."  *York v. Sullivan*, 369 Mass. 157, 164 (1975).

## CONCLUSION

The Complaint should be dismissed with prejudice.  Rather than take the opportunity to amend, Plaintiff chose to stand on its Complaint with full knowledge of Chainalysis's arguments. *See Brown v. Cerberus Cap. Mgmt., L.P.*, 703 F. App'x 11, 15 (2d Cir. 2017).

11

Dated:  New York, New York
          July 23, 2025

Respectfully submitted,

*/s/ Alexander C. Drylewski*
Robert D. Drain
Alexander C. Drylewski
Lara A. Flath
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
robert.drain@skadden.com
alexander.drylewski@skadden.com
lara.flath@skadden.com

*Counsel for Defendant Chainalysis Inc.*

## WORD COUNT CERTIFICATION

I hereby certify pursuant to the Local Civil Rule 7.1 of the Joint Local Rules for S.D.N.Y. and E.D.N.Y. that, according to the word count tool in the document processing software used to prepare this memorandum of law, the total number of words herein is 3,500.

_/s/ Alexander C. Drylewski_
Alexander C. Drylewski

_Counsel for Defendant Chainalysis Inc._